FILED
2005 Aug-09 AM 10:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| CANAL INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **7:02-cv-918-UWC** |
| **SOUTHERN READY MIX, INC.** ) | |
| **and TRAVELERS INSURANCE** ) | |
| **CO.,** ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Canal Insurance Company ("Canal") initiated this action against Defendants Southern Ready Mix, Inc. ("SRM") and Travelers Insurance Company ("Travelers") seeking recovery of a portion of a paid judgment. Following discovery, the parties have filed cross Motions for Summary Judgment. (Docs. 39, 41, 44.)

Based on the undisputed facts, the Court concludes that the Defendants' motions are due to be granted; and the Plaintiff's motion is due to be denied.

**I. THE UNDISPUTED FACTS**

1. SRM contracted with Tuscaloosa County ("County") to provide stone for the County's road projects. (Doc. 43, Def. Traveler's Evidentiary Submissions, Ex. 2.)

2. SRM then contracted with Vinson Trucking to deliver the stone to the various road sites. (Doc. 45, Pl.'s Ex. 3, Def.'s Answers to Interrogs. ¶ 5.)

3. Vinson Trucking leased a vehicle from William Powell ("Powell") d/b/a BCA Trucking, and hired Powell as an independent contractor to drive the truck. (Doc. 43, Def. Traveler's Evidentiary Submissions, Ex. 4, Trial Tr. at 57-58.)

4. On June 19, 1998, after having loaded a truck with stone from SRM, Powell attempted to deliver the stone to a County road project. (Doc. 43, Def. Traveler's Evidentiary Submissions, Ex. 4, Tr. Transcript at 68.)

5. Powell's truck, when loaded with the stone, weighed over 36 tons. (*Id*. at 69, 73-75.)

6. In route to the County road project, Powell made a wrong turn and drove his truck onto the Shirley Bridge in Tuscaloosa.

7. The Shirley Bridge has a weight restriction of 13 tons. (*Id*.)

8. The excess weight of Powell's truck caused the Shirley Bridge to collapse into the Sipsey River.

9. As a result of the collapse of the bridge, the bridge was destroyed although Powell was not hurt.

10. On October 6, 1998, the County sued Vinson in state court for monetary damages related to the collapsed bridge. (Doc. 43, Def. Traveler's Evidentiary Submissions, Ex. 6.)

11.   In April 1999, the County joined Powell and SRM as additional defendants in the state court action.  (Doc. 43, Def. Traveler's Evidentiary Submissions, Ex. 7.)

12.   The state court complaint against Powell alleged claims for negligence and wanton, willful, intentional and/or reckless conduct.  (*Id*.)

13. The aforesaid complaint against SRM alleged claims of breach of contract, negligence, and wanton, willful, intentional and/or reckless conduct.

14.   SRM  filed a cross claim for common law indemnity against Vinson and Powell in the state court action.

15.   On July 24, 2000, the state trial court granted Vinson and Powell's motion for judgment on the pleadings with respect to the claims for punitive and consequential damages.  (Doc. 45, Pl.'s Ex. 10, Order.)

16.   On April 24, 2001, the trial court granted partial summary judgment to SRM on the County's claims of negligence, wantonness, willfulness, intentional and/or reckless conduct.   (Doc. 45, Pl.'s Ex. 11, Order.)

17. The only claim then remaining against SRM in the state court was the County's breach of contract claim.

18.   The state trial court also granted Vinson's partial summary judgment on the County's claims of negligence, wantonness, willfulness, and intentional and/or reckless conduct.  (*Id*.)

19.   The case was tried and at the close of evidence,  the trial court granted the

County's motion for judgment as a matter of law against Powell. The judgment was based on Ala. Code (1975) § 32-9-5, the statutory provision for replacement of damaged bridges. (Doc. 45, Pl.'s Ex. 5, Trial Transcript at 366.)

20. Accordingly, the trial court dismissed all of the County's claims against Vinson. (*Id.* at 367.)

21. The jury returned a general verdict against Powell pursuant to § 32-9-5, and against SRM on breach of contract, in the amount of $485,000.00. (Doc. 45, Pl.'s Ex. 12, Case Action Summary.)

22. The jury also returned a verdict in favor of Powell and Vinson on SRM's cross-claim for common law indemnity. (*Id*.)

22. On October 24, 2001, the County filed a garnishment process against Canal, Powell's liability insurer, for the sum of $515,921.24. (Doc. 45, Pl.'s Ex. 13, Process of Garnishment.) This amount included the total verdict, costs and accumulated interest.

23. The County also informed Powell that it had elected to collect against Canal only, based on the County's right to do so under the judgment for joint and several liability. (Doc. 45, Pl.'s Ex. 14 at 2.)

24. In November 2001, Canal paid the full amount of the judgment.

25. The County thereafter satisfied the judgment against Powell and SRM. (Doc. 45, Pl.'s Ex. 15, Satisfaction of J.)

26. On April 11, 2002, Canal filed the instant action, seeking contribution from

SRM in the amount of $260,261.45.[1]  The complaint is based on SRM's joint and several liability judgment in the underlying action.

27. There is no oral or written contract between SRM and Powell which adds Powell as an insured under SRM's insurance policy with Travelers.

28. There is no indemnity agreement between SRM and Powell.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c).  The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits', if any, which the moving party believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)).  When ruling on a motion for summary judgment, the court must view

---

[1] SRM subsequently filed bankruptcy, which caused this action to be dismissed.  After disposal of the bankruptcy issue, the case was reinstated and Canal filed an Amended Complaint on December 4, 2003.  Travelers, which insures SRM, was added as a Defendant.

the facts in a light favorable to the non-moving party.[2] *See, e.g., Raney v. Vinson Guard Service*, 120 F.3d 1192, 1196 (11th Cir. 1997). The Eleventh Circuit has held that evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact. *See, e.g., Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

### III. DISCUSSION

**A. Joint and Several Liability; Contribution Between Joint Tortfeasors**

Alabama law regarding joint obligor liability is found in Alabama Code § 6-5-283, which provides that:

> [w]hen two or more persons are jointly bound by judgment, bond, covenant, or promise in writing of any description whatsoever, the obligation or promise is in law several as well as joint, and an action may be commenced thereon against the legal representatives of such as are dead, jointly with the survivors, and judgments entered accordingly.

The statute allows a plaintiff to sue one or all joint obligors. *Shirley v. Lin*, 548 So. 2d 1329, 1335 (Ala. 1989); *see also Burgreen Contracting Co. v. Goodman*, 314 So. 2d 284, 293 (Ala. Civ. App. 1975). When a judgment is rendered against several defendants, each defendant is held jointly and severally liable for the entire verdict amount. *Shirley*,

---

[2] "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant' . . . and draw 'all justifiable inferences . . . in his favor . . . .' " *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991). "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979).

548 So. 2d at 1335.  Full payment by any defendant satisfies the entire judgment as to all defendants.  *Id*.

Alabama follows the common law rule that joint tortfeasors may be sued jointly or severally.  *Beloit Corp. v. Harrell*, 339 So. 2d 992 (Ala. 1976).  Each tortfeasor is liable for the entire resulting loss and the Plaintiff can recover from one or all joint tortfeasors.  *Henderson v. Wade Sand and Gravel Co., Inc.*, 338 So. 2d 900 (Ala. 1980).

Moreover, Alabama law follows the common law rule that there is no contribution as between a joint tortfeasors.  *Consolidated Pipe and Supply Co. v. Stockham Valves and Fittings, Inc.*, 365 So. 2d 968 (Ala. 1978).

Canal's reliance on Section § 6-5-283 for its contribution argument is clearly misplaced.  Indubitably, Powell (Canal's insured) and SRM were jointly liable to Tuscaloosa County for the judgment. But the rub is that the County had the option of pursuing <u>either</u> Powell, <u>or</u> SRM, <u>or</u> both!  It elected to proceed against Powell.  The effect of his insurer's payment of the judgment was not simply to satisfy the judgment as to him, but also as to any other defendant against whom the judgment was entered. Unfortunately for Canal, the County pointed the fickle finger of fate in the direction of its insured, and not in the direction of SRM.  The coupling of that decision with the rule prohibiting contribution against joint tortfeasors, means that as a matter of law, Canal is left holding the bag.

**B. Contribution  Between Concurrently Liable  Insurers**

Canal seeks contribution from Travelers under the "concurrently liable insurer" doctrine. It relies on *Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 561-62 (Ala. 1994).

In *Hall*, the defendant building owner purchased Alfa liability insurance for both him and his building manager. The building manager personally purchased liability insurance through Nationwide. A fire erupted in the building, killing a tenant. When the tenant's executrix sued the building manager for wrongful death, he sought coverage under both the Nationwide insurance policy and Alfa policies. Nationwide settled with the executrix; then brought an action for contribution against Alfa.

The Alabama Supreme Court held that when two or more insurance carriers are "primary insurers to the same insurable interest, subject matter, and risk, they share liability. . .." *Hall*, 643 So. 2d 561. Further, the court stated that "if an insurer has paid the entire amount of a loss, that insurer may seek contribution from other insurers liable for the same risk. . .." *Id*. The court determined that both Alfa and Nationwide were primary insurers of the property manager and that they were jointly liable for the same risks. Accordingly, Nationwide was entitled to recover from Alfa its ratable share of the settlement. *Id*.

Unlike *Hall*, Canal and Travelers are not primary insurers of Powell. In fact, Powell is not insured by Travelers in any capacity. The *Hall* case is clearly distinguishable from the facts of the present case.

Therefore, Canal's reliance on *Hall* for contribution as a concurrently liable insurer must fail.

### C.  The Travelers Insurance Policies As A Basis Of Recovery

When an insurance policy provision is clear, it must be enforced as written. *Auto-Owners Ins. Co. v. American Central Ins. Co.*, 739 So. 2d 1078, 1081 (Ala. 1988). When the language of a policy provision is ambiguous, it must be construed with a view towards determining the intent of the parties. *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker and Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996). In order to determine the intent of the parties, a court must examine the words and phrases in context with all other provisions. *Id*. The words and phrases are to be given their "rational and practical meaning." *Bituminous Casualty Corp. v. Harris*, 372 So. 2d 342, 344 (Ala. Civ. App. 1979).

#### 1. Powell As An "Insured" Under The Travelers Policy

Canal argues that Powell is an "insured" under Travelers' automobile insurance policy, citing to its Business Auto Coverage Form, Section II - Liability Coverage, Section A. 1., which states:

"The following are "insureds":

a.      You for any covered "auto." . . .

c.      Anyone liable for the conduct of an "insured" described above but
         only to the extent of that liability."

(Doc. 45, Pl. Ex. 16, Business Auto Coverage Form at 2 of 11.)

Canal asserts that SRM breached its contract with the County to control the loads of stone which resulted in Powell being jointly and severally liable with SRM. (Doc. 45, Pl.'s Brief at 10.) Canal also argues that SRM directed Powell over the bridge with incorrect driving instructions and that Powell is therefore liable for SRM's breach. (*Id.* at 11.) Lastly, Canal argues that the language in the policy is ambiguous and should be construed against the drafting party. (*Id.*)

First, there is no evidence in the record that Powell is liable because of SRM's breach of contract or incorrect driving instructions. Further, the general verdict rendered against both Powell and SRM reflects that it found Powell to be liable for his own conduct, not for the conduct of SRM.

Canal's position that Powell is an insured under SRM's Traveler's policy is unsupported by the undisputed facts and the law.

### 2.  Powell's Dump Truck As A "Covered Auto" Under The Travelers Policy

The Travelers policy states:

> We will pay sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

(Doc. 45, Pl. Ex. 16, Business Auto Coverage Form at 2 of 11.)

Because Powell is not an "insured" under the policy, the dump truck is not a covered auto.

### 3.  Powell As An Insured Under The Travelers General Liability Policy

The Travelers general liability policy states:

8. "Insured contract" means:

> f. That part of any other contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Doc. 45, Pl.'s Ex. 18 at 9 of 11.)  Canal contends that Powell's liability based on the bridge replacement statute qualifies as "tort liability" under this clause.

The Travelers insurance policy was an agreement between Travelers and SRM. SRM entered into a contract with the County.  Travelers never entered into a contract with Powell.  As such, the above language can only be construed to mean that Travelers would assume liability for the County ("another party") in the event the County was liable to a third party.  The County did not have any liabilities to third parties as a result of the bridge collapse.

In sum, Canal's position that Powell is covered under the Travelers General Liability Policy lacks merit.

### D.  The Travelers Policy As "Primary" Insurance

Canal argues that because Powell is an insured under the Traveler's policy, liability must be apportioned between Traveler's and Canal.  (Doc. 45, Pl.'s Br. at 18.)

As previously found, neither Powell or Powell's truck are insured under the Traveler's policy.

Therefore, Canal cannot prevail on this argument.

### CONCLUSION

By separate order, the Defendants' Motions for Summary Judgment are due to be granted; and the Plaintiff's motion denied.

Done this 9th day of August, 2005.

_____
U.W. Clemon
Chief United States District Judge